**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMHITA GERA, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>UiPATH, INC., DANIEL DINES, and ASHIM GUPTA,<br><br>    Defendants. | Case No.: 1:23-cv-07908-DLC<br><br>Hon. Denise L. Cote |

**MEMORANDUM OF LAW IN SUPPORT OF YOUNG KWON'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND <u>APPROVAL OF SELECTION OF COUNSEL</u>**

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.    FACTUAL BACKGROUND .......................................................................................... 2

II.    PROCEDURAL HISTORY ........................................................................................ 5

III.    ARGUMENT .............................................................................................................. 6

    A.    Appointing Movant as Lead Plaintiff Is Appropriate ...................................... 6

        1.    Movant Filed a Timely Motion. ................................................................. 7

        2.    Movant Has the Largest Financial Interest in the Relief Sought. ............... 8

        3.    Movant Satisfies the Relevant Requirements of Rule 23........................... 8

            a.    Movant's Claims Are Typical.................................................... 9

            b.    Movant Is An Adequate Representative. ...................................... 9

    B.    Approving Lead Plaintiff's Choice of Counsel Is Appropriate. .................................... 10

IV.    CONCLUSION.......................................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brady v. Top Ships Inc.,*
    324 F. Supp. 3d 335 (E.D.N.Y. 2018) ............................................................................ 3, 5

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.,*
    269 F.R.D. 291 (S.D.N.Y. 2010) ............................................................................... 6

*Daniels Family 2001 v. Las Vegas Sands Corp.,*
    Case No. 2:20-cv-01958-GMN-EJY, 2021 U.S. Dist. LEXIS 974 (D. Nev. Jan. 5, 2021) ...... 8

*Deinnocentis v. Dropbox, Inc.,*
    Case No. 19-cv-06348-BLF, 2020 U.S.  Dist. LEXIS 8680 (N.D. Cal. Jan. 16, 2020)........... 8

*Ford v. VOXX Int'l Corp.,*
    No. 14-cv-4183-JS-AYS, 2015 U.S. Dist. LEXIS 92705 (E.D.N.Y. Apr. 13, 2015).............. 5

*In re Cendant Corp.,*
    264 F.3d 201 (3d Cir. 2001)..................................................................................... 7

*In re Coinbase Global Securities Litigation,*
    No. 3:21-cv-05634-VC, Dkt. No. 87 (N.D. Cal. Nov. 5, 2021) ............................................. 8

*In re Gentiva Sec. Litig.,*
    281 F.R.D. 108 (E.D.N.Y. 2012) .............................................................................. 5

*In re Hebron Tech. Co. Sec. Litig.,*
    C.A. No. 1:20-cv-4450-PAE, 2020 US Dist LEXIS 169480 (S.D.N.Y. Sep. 16, 2020).......... 4

*Kuriakose v. Fed. Home Loan Mortg. Co.,*
    No. 1:08-cv-7281-JFK, 2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) ................ 6

*Malriat v. Quantumscape Corp.,*
    Nos. 3:21-cv-00058-WHO; 3:21-cv-00070-WHO; 3:21-cv-00150-WHO, 2021 U.S. Dist.
    LEXIS 76914 (N.D. Cal. April 20, 2021)...................................................................... 8

*Snyder v. Baozun Inc.,*
    Nos. 1:19-cv-11290 (ALC); 1:19-cv-11812 (ALC), 2020 U.S. Dist. LEXIS 163967
    (S.D.N.Y. Sept. 8, 2020)......................................................................................... 8

*Subramanian v. Watford, et. al.,*
    Civil Action No. 20-cv-02652-CMA-STV, 2021 U.S. Dist. LEXIS 81823 (D. Colo. April
    29, 2021) ............................................................................................................. 8

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.,*
    No. 10-cv-00864-SLT, 2011 U.S. Dist. LEXIS 88552 (E.D.N.Y. May 31, 2011).................. 6

*White Pine Invs. v. CVR Ref.,*
  Case No. 20 Civ. 2863 (AT), 2021 U.S. Dist. LEXIS 1199 (S.D.N.Y. Jan. 5, 2021) ............. 8

*White v. Nano-X Imaging LTD, et al.,*
  Nos. 20-CV-4355 (WFK)(MMH), 20-CV-4528 (RRM)(MMH), 2022 U.S. Dist. LEXIS
  143105 (E.D.N.Y. Aug. 10, 2022) ......................................................................................... 7

**Statutes**

15 U.S.C. § 78u-4 .............................................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... 1, 3, 5, 6

Young Kwon ("Movant") respectfully submits this memorandum of law in support of his motion ("Motion") to appoint him as lead plaintiff and approve his selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel pursuant to Section 21D of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), on behalf of purchasers of UiPath, Inc. ("UiPath" or the "Company") common stock between April 21, 2021 and March 30, 2022, inclusive (the "Class" who purchased during the "Class Period"), concerning claims under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5, promulgated thereunder, 17 C.F.R. §240.10b-5, against Defendants UiPath, Daniel Dines ("Dines"), and Ashim Gupta ("Gupta"), (collectively, "Defendants").

Pursuant to the PSLRA, the person or group of persons with the largest financial interest in the relief sought by the Class who also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure are presumed to be the "most adequate" plaintiff—*i.e.*, the plaintiff most capable of adequately representing the interests of Class members. The PSLRA provides that the Court shall appoint the most adequate movant as lead plaintiff. Movant believes that he is the "most adequate" movant, as defined by the PSLRA, and should be appointed lead plaintiff based on the substantial financial losses he suffered as a result of defendants' wrongful conduct as alleged in this litigation. Moreover, Movant satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as his claims are typical of other Class members' claims and he will fairly and adequately represent the interests of the Class. In addition, Movant's selection of Levi & Korsinsky as Lead Counsel should be approved because the firm has substantial experience in securities class action litigation and the experience and resources to efficiently prosecute the Action.

## I.   FACTUAL BACKGROUND[1]

Founded in 2005, UiPath is a global provider of RPA software. ¶ 13. RPA software allows companies to use installed "robots" to execute mundane and menial tasks on behalf of their employees, freeing up those employees to perform more valuable tasks. *Id.* Such tasks include, for example, logging into applications, extracting information from documents, moving folders, filling in forms, and updating information and databases. UiPath markets its software platform as an "end-to-end" solution that allows its customers to discover novel automation opportunities, as well as build, manage, run, engage, and govern their automations. *Id.*

Due to challenges created by the COVID-19 pandemic, demand for automation software, including RPA software, increased in 2020 as businesses sought to mitigate various logistical and financial setbacks created by lockdowns, worker shortages, and remote work mandates. ¶ 19. As a result, the automation industry was widely viewed as a burgeoning industry. *Id.* Despite these trends, UiPath claimed that it had not received any substantial boost to its overall business from the pandemic. *Id.* As defendant Dines summarized during a September 7, 2021 earnings call: "We always said that COVID was net neutral for us. We've seen some business industries accelerating, [we've seen] some deceleration in other industries." *Id.*

On April 21, 2021, defendants conducted UiPath's initial public offering ("IPO"), selling over 27.5 million UiPath shares at a price of $56 per share for over $1.5 billion in gross offering proceeds. ¶ 21. Notably, more than half of all shares sold in the IPO were sold by Company insiders, including defendant Dines – UiPath's founder, CEO, and Chairman – who sold over $77

---

[1] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "*Gera* Complaint") filed in the action styled *Gera v. UiPath, Inc., et. al.,* Case No. 1:23-cv-07908-DLC (the "*Gera* Action"). Unless otherwise defined, capitalized terms shall have the same meaning set forth in the *Gera* Complaint. The facts set forth in the *Gera* Complaint are incorporated herein by reference.

million worth of UiPath shares in the offering. *Id.* Even more unusual, defendants structured the IPO so as to grant themselves the ability to dump substantial UiPath shares soon after the offering was completed, rather than subjecting themselves to a full 180-day lockup period as is customary in IPOs. *Id.* The Individual Defendants and other UiPath insiders continued to sell UiPath shares almost immediately after the partial lockup period ended. *Id.* Specifically, defendant Dines sold nearly $2.6 million worth of UiPath shares in November 2021 at prices above the IPO price, and UiPath's CFO defendant Gupta sold over $13 million worth of UiPath shares between June 2021 and January 2022 at prices as high as $70.76 per share. *Id.*

The statements referenced in ¶¶29-37 of the *Gera* Complaint were materially false and/or misleading when made because they failed to disclose the following adverse facts pertaining to the Company's business, operations, and financial condition, which were known to defendants or recklessly disregarded by them as follows: (a) that UiPath had enacted a widespread discounting program prior to the IPO, which had the effect of temporarily boosting the Company's revenue and ARR metrics, cannibalizing its future sales, eroding the Company's margins, and increasing the risk of client churn; (b) that UiPath's actual total addressable market was not as large as portrayed by defendants, because many companies included in the market survey did not need the type of high-cost, high-functionality automation products offered by the Company; (c) that UiPath was losing customers to Microsoft, ServiceNow, SAP, Salesforce, IBM, and other established enterprise software vendors that were building automation into their platforms; (d) that UiPath was losing customers due to the increased availability of low-code automation software offered by vendors, such as Microsoft's Power Automate software, which were capable of addressing the majority of customer use cases at a fraction of the price of UiPath's products and services; (e) that UiPath was suffering from a loss of channel sales due to strained relationships with the Company's

partners as a result of increased competition between UiPath and these partners; and (f) that, as a result of (a)-(e) above, defendants' statements during the Class Period regarding the Company's business, operations, and key financial metrics such as revenues and ARR were materially false and misleading. ¶ 38.

On September 7, 2021, UiPath issued a release disclosing the Company's financial results for the quarter ended July 31, 2021 (the "2Q22 Release"). ¶ 40. The 2Q22 Release revealed an unexpected slowdown in UiPath's revenues and reported ARR metrics. *Id.* Specifically, the 2Q22 Release disclosed that UiPath's net new ARR annual growth rate had declined dramatically from approximately 55% in the prior quarter to just 33% in the current quarter and further that growth in UiPath's leading license revenue category had fallen from 57% year-over-year in the prior quarter to just 20% in the current quarter. *Id.* On the corresponding conference call, defendant Gupta also revealed that UiPath had engaged in substantial discounting of its products prior to the IPO and that the Company was in the process of altering the structure of its contracts to include a "ramping" feature whereby customer contract commitments would start small and increase over time and thereby reduce the need for the Company to offer widespread discounting as it had before. *Id.*

As the market reacted to this news, the price of UiPath common stock fell from $62.46 per share on September 7, 2021 to $54.40 per share on September 9, 2021, a decline of more than 12% over a two-day period, or more than $8 per share, on above-average trading volume. ¶ 42.

On December 8, 2021, UiPath issued a release announcing its financial results for the quarter ended October 31, 2021 (the "3Q22 Release"). ¶ 57. The 3Q22 Release revealed that UiPath's growth had stalled further, disclosing that its ARR annual growth rate during the quarter had declined for the third quarter in a row to 58% and that its net new ARR remained subdued at

42% growth year-over-year, down substantially from the 55% growth reported in the 1Q22 Release. *Id.* On the corresponding conference call, defendant Gupta provided additional information regarding the Company's progress on transitioning to non-discounted one-year deals and its related impacts on the quarter. *Id.*

On this news, the price of UiPath common stock dropped on December 8, 2021 from $47.71 per share to $44.05 per share on December 10, 2021, a decline of over 7%, over a two-day period, or more than $3 per share, on above-average trading volume. ¶ 58.

Then, on March 30, 2022, UiPath issued a release announcing its financial results for the quarter and year ended January 31, 2022 (the "4Q22 Release"). ¶ 67. The 4Q22 Release disclosed that UiPath had earned revenues of just $289.7 million during the quarter, representing year-over-year growth of 39%. *Id.* In addition, the 4Q22 Release contained deeply disappointing ARR and revenue guidance revealing that the declining growth trends adversely impacting UiPath were expected to continue. *Id.* Specifically, UiPath projected first quarter 2023 ARR in the range of $960 million to $965 million and fiscal 2023 ARR in the range of $1.2 billion to $1.21 billion. *Id.* UiPath also projected 2023 revenue in the range of $223 million to $225 million and fiscal 2023 revenue in the range of $1.075 billion to $1.085 billion. *Id.* All of these figures were substantially below consensus analysts' expectations. *Id.*

In response to this news, the price of UiPath common stock declined from $29.04 per share on March 30, 2022 to $21.59 per share on March 31, 2022, a decline of $7.45 per share, or more than 25%, on above-average trading volume. ¶ 69.

## II.   PROCEDURAL HISTORY

Pending before this Court is the above-captioned *Gera* Action against the Defendants. Plaintiff Samhita Gera ("Gera") commenced the first-filed action on September 6, 2023. On that

same day, counsel acting on Gera's behalf published a notice on *Business Wire* announcing that a securities class action had been initiated against the Defendants. *See* Exhibit C ("Press Release") to the Declaration of Adam M. Apton in Support of Movant's Motion ("Apton Decl.").

## III.   ARGUMENT

### A.   Appointing Movant as Lead Plaintiff Is Appropriate

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" — *i.e.*, the plaintiffs most capable of adequately representing the interests of the Class — is the class member or group of class members that:

(aa) has either filed the complaint or made a motion in response to a notice. . .

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

The presumption "may be rebutted only upon proof by a purported member of the plaintiff class that the presumptively most adequate plaintiff—

(aa) will not fairly and adequately protect the interest of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Movant satisfies the forgoing criteria and has complied with all of the PSLRA's requirements to be appointed lead plaintiff. Movant has, to the best of his knowledge, the largest financial interest in this litigation—having lost $264,529.20 as a result of his transactions and meets the relevant requirements of Federal Rule of Civil Procedure 23. *See* Loss Chart, Ex. B to Apton Decl. In addition, Movant is not aware of any unique defenses that Defendants could raise against him that would render him inadequate to represent the Class. Accordingly, Movant respectfully submits that he should be appointed as lead plaintiff. *See Brady v. Top Ships Inc.,* 324 F. Supp. 3d 335, 350 (E.D.N.Y. 2018).

**Movant Filed a Timely Motion.**

On September 6, 2023, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), counsel for Gera published the Press Release on *Business Wire*—a widely circulated national business-oriented wire service—announcing that a securities class action had been filed against defendants herein and advising purchasers of UiPath common stock that they had 60 days from the publication of the September 6, 2023 notice to file a motion to be appointed as lead plaintiff. *See* Apton Decl., Ex. C; *In re Hebron Tech. Co. Sec. Litig.,* C.A. No. 1:20-cv-4450-PAE, 2020 US Dist LEXIS 169480, at *6 (S.D.N.Y. Sep. 16, 2020) (finding that a notice published on *Business Wire* satisfied Rule 23).

Movant timely filed his motion within the 60-day period following publication of the September 6, 2023 Press Release and submitted herewith a sworn certification attaching his transactions in UiPath common stock and attesting that he is willing to serve as representative of the Class. *See* PSLRA Certification, Ex. A to Apton Decl. By making a timely motion in response to a PSLRA notice, Movant satisfies the first PSLRA requirement to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(aa).

**Movant Has the Largest Financial Interest in the Relief Sought.**

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). At the time of this filing, Movant believes that he has the largest financial interest among Class members who filed timely applications for appointment as lead plaintiff and, accordingly, is presumed to be the "most adequate plaintiff."

Movant acquired UiPath common stock at prices alleged to have been artificially inflated by Defendants' materially false and misleading statements and was injured thereby. As a result of Defendants' false statements, Movant suffered an approximate loss of $264,529.20. *See* Apton Decl., Ex. B. Movant is unaware of any other Class member claiming a larger financial interest in this matter that has filed a motion for appointment as lead plaintiff. Consequently, Movant believes that he has the "largest financial interest in the relief sought by the Class." Thus, Movant satisfies the second PSLRA requirement—the largest financial interest—and should be appointed as lead plaintiff for the Class. *See Top Ships,* 324 F. Supp. 3d at 350.

**3.**

**Movant Satisfies the Relevant Requirements of Rule 23.**

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

FED. R. CIV. P. 23(a).

In making its determination that a lead plaintiff candidate satisfies the requirements of Rule 23, typicality and adequacy are the only provisions of Rule 23 that are to be considered. *Ford v. VOXX Int'l Corp.,* No. 14-cv-4183-JS-AYS, 2015 U.S. Dist. LEXIS 92705, at *6 (E.D.N.Y. Apr. 13, 2015) (citing *In re Gentiva Sec. Litig.,* 281 F.R.D. 108, 112 (E.D.N.Y. 2012)). At the lead plaintiff stage of the litigation, Movant need only make a preliminary showing that he satisfies Rule 23's typicality and adequacy requirements. *Id*. at *6.

### a.   Movant's Claims Are Typical.

The Rule 23(a) typicality requirement is satisfied when a lead plaintiff's claims arise from the same event, practice, or course of conduct that gives rise to other class members' claims, and lead plaintiff's claims are based on the same legal theory. *See Kuriakose v. Fed. Home Loan Mortg. Co.,* No. 1:08-cv-7281-JFK, 2008 U.S. Dist. LEXIS 95506, at *11-13 (S.D.N.Y. Nov. 24, 2008); Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Movant's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Movant alleges that Defendants' material misstatements and omissions concerning UiPath's business, operational and financial results violated the federal securities laws. Movant, like all members of the Class, purchased or otherwise acquired UiPath common stock during the Class Period. *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-cv-00864-SLT, 2011 U.S. Dist. LEXIS 88552, at *12 (E.D.N.Y. May 31, 2011) (typicality satisfied where movants purchased stock at artificially inflated prices "and suffered damages as a result"). Accordingly, Movant's interests and claims are "typical" of the interests and claims of the Class.

### b.   Movant Is An Adequate Representative.

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead

plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.,* 269 F.R.D. 291, 297 (S.D.N.Y. 2010). Movant has demonstrated his adequacy by retaining competent and experienced counsel, Levi & Korsinsky, with the resources and expertise to efficiently prosecute the Action, and Movant's financial losses ensure that he has sufficient incentive to ensure the vigorous advocacy of the Action. *See* Apton Decl., Ex. B. Movant is not aware that any conflict exists between his claims and those asserted on behalf of the Class.

Moreover, Movant considers himself to be an experienced investor, having been investing in the stock market for 13 years. He resides in Anaheim, California, and possesses a bachelor's degree in international business. Movant is currently employed at Vi-Cal metals, Inc. as a managing director of logistics and international sales. Further, Movant has experience hiring and overseeing attorneys. Therefore, Movant will prosecute the Action vigorously on behalf of the Class. *See* Apton Decl., Ex. D, Movant's Declaration in support of his motion.

Accordingly, Movant meets the adequacy requirement of Rule 23.

### B.    Approving Lead Plaintiff's Choice of Counsel Is Appropriate.

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp.*, 264 F.3d 201, 274 (3d Cir. 2001). Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Movant has selected Levi & Korsinsky to pursue this litigation on his behalf and has retained the firm as the Class' Lead Counsel in the event he is appointed as lead plaintiff. Levi & Korsinsky possesses adequate experience in securities litigation and has successfully prosecuted numerous securities class actions on behalf of injured investors, as reflected by the Firm Résumé attached to

the Apton Decl. as Ex. E. Moreover, Levi & Korsinsky has often been appointed as lead counsel in similar actions in this Circuit and across the country arising under the federal securities laws on behalf of investors. *See also e.g., Ryan v. FIGS, Inc. et al.*, Case No. 2:22-cv-07939-ODW (KSx), ECF No. 64 (C.D. Cal. Feb. 14, 2023); *Schoen v. Eiger Biopharmaceuticals, Inc.*, Case No. 22-cv-06985-RS, 2023 U.S. Dist. LEXIS 18551, at *6-7 (N.D. Cal. Feb. 3, 2023) (noting "the firm appears to have adequate experience in securities actions, as well as the resources and financial ability to be lead counsel."); *Gilbert v. Azure, et al.*, No. 1:22-cv-7432-GHW, 2022 U.S. Dist. LEXIS 221793, at *17 (S.D.N.Y. Dec. 8, 2022) (appointing Levi & Korsinsky noting the firm "is experienced in securities class action litigation" and "has been appointed by judges in this District to serve as lead counsel or co-lead counsel in other matters"); *Michalski v. Weber Inc., et al.*, Case No. 1:21-cv-03966-EEB, ECF No. 59 (N.D. Ill. Nov. 29, 2022); *Patterson v. Cabaletta Bio, Inc., et al.*, Case 2:22-cv-00737-JMY, ECF No. 10 (E.D. Pa. Aug. 10, 2022). Thus, the Court may rest assured that by granting Movant's motion, the Class will receive the highest caliber of legal representation possible.

## IV.    CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court grant his Motion and enter an Order: (1) appointing Movant as Lead Plaintiff, (2) approving his selection of Levi & Korsinsky as Lead Counsel for the Class, and (3) granting such other relief as the Court may deem just and proper.

*[Signature on following page]*

11

Dated: November 6, 2023                    Respectfully Submitted,


                                           **LEVI & KORSINSKY, LLP**

                                           By: */s/ Adam M. Apton*
                                           Adam M. Apton (AS-8383)
                                           33 Whitehall Street, 17th Floor
                                           New York, NY 10004
                                           Tel: (212) 363-7500
                                           Fax: (212) 363-7171
                                           Email: aapton@zlk.com

                                           *Lead Counsel for Young Kwon and*
                                           *[Proposed] Lead Counsel for the Class*